CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 20, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **AMILCAR JOSHUA QUINTANA,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00296** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **ALLEN, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Amilcar Joshua Quintana, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against three correctional officials at Red Onion State Prison (Red Onion). The case is presently before the court for review under 28 U.S.C. § 1915A(a). Having reviewed the amended complaint, the court concludes that the federal claims must be dismissed for failure to state a claim upon which relief may be granted, and the court declines to exercise supplemental jurisdiction over any remaining claims under state law.

### I.    Background

According to the amended complaint, Quintana is in the custody of the Virginia Department of Corrections (VDOC) pursuant to an Interstate Corrections Compact agreement between the Commonwealth of Virginia and the State of North Carolina, where Quintana was convicted. See Am. Compl., ECF No. 16, at 14.

On May 20, 2024, Quintana filed an informal written complaint alleging that he had given Lt. Allen a brown envelope containing legal documents to be mailed to a court in North Carolina, along with a money withdrawal form, and that the business office at Red Onion had not yet mailed the legal documents. Compl. Ex., ECF No. 1-2 at 12. The

complaint was assigned to the business office for a response, and on June 8, 2024, a staff member responded that mail goes to the mailroom first for the postage amount to be determined and that the business office had no record of receiving a postal withdrawal form for Quintana. Id.

On June 9, 2024, Quintana signed a regular grievance against Allen in which he requested that Allen either find his legal documents or "pay for the damages cost" and write a letter to the North Carolina Court of Appeals explaining why Quintana had "missed [a] court deadline." Id. at 10. The grievance department received the regular grievance on June 14, 2024, and Grievance Coordinator T. Still subsequently issued a "grievance continuance receipt" setting a "next action date" of August 9, 2024. Id. at 7. In the meantime, according to Quintana, Allen "forged" Quintana's signature on the section of the grievance form that permits an inmate to voluntarily withdraw a grievance. See Am. Compl. at 2 ("My regular grievance got forged with my signature in order to withdraw my regular grievance to prevent me from seeking monetary damages [as] relief for deprivation of personal property.")

On July 18, 2024, Quintana submitted a written complaint requesting an investigation into the alleged forgery of his signature on the grievance form. Compl. Ex., ECF No. 1-2 at 16. The written complaint was assigned to "UM-C" for a response. Id. On August 2, 2024, Sgt. Cobb responded that "Maxpro camera footage . . . shows you signing this document when it was brought to you." Id.

On August 3, 2024, Quintana submitted a regular grievance against Sgt. Cobb, Lt. Allen, and Grievance Coordinator Still. Id. at 14. Quintana asserted that Allen had forged his signature, that forgery is a "federal crime," and that Cobb and Still were "aiding & abetting"

forgery. Id. He asked to "be compensated $15,219.00 for the forgery" and to be transferred to a facility in North Carolina. Id.

After utilizing the VDOC's grievance process, Quintana filed this action against Allen, Cobb, and Still. Quintana claims that the defendants violated the following federal constitutional and statutory provisions: the First, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution; Article IV, § II of the United States Constitution; 18 U.S.C. §§ 2 and 922(A)(6); and 42 U.S.C. §§ 1981, 1985(3), and 1997d.[1] Quintana also claims that the defendants violated his rights under state law. See Am. Compl. at 4–15.

## II.    Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from an employee or agent of a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss a complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[1] Quintana also references 28 U.S.C. § 1343(a), "which confers jurisdiction upon the district courts 'of any civil action authorized by law to be commenced by any person . . . (3) [t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights.'" Crosby v. City of Gastonia, 635 F.3d 634, 639 n.5 (4th Cir. 2011) (alterations in original) (quoting 28 U.S.C. § 1343(a)).

3

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "[D]istrict courts are not the legal advocates of pro se litigants," Jackson v. Dameron, 171 F.4th 641, 650 (4th Cir. 2026), and a complaint filed without counsel "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III.    Discussion

### A.    Claims under Federal Law

### 1.    Federal Constitutional Claims under § 1983

Quintana seeks relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### a.    First Amendment

Throughout the amended complaint, Quintana claims that the defendants violated his rights under the First Amendment by attempting to prevent him "from seeking relief for deprivation of personal property." Am. Compl. at 4, 10–13; see also id. at 7–8 (alleging that defendants retaliated against him by attempting "to prevent access from seeking relief for deprivation of personal property resulting from negligence"). Based on the current allegations, however, the court is unable to conclude that Quintana has stated a viable First Amendment claim.

"Generally, inmates 'have no constitutional entitlement or due process interest in access to a grievance procedure,' so they may not assert a § 1983 claim under the First Amendment alleging 'denial of a specific grievance process.'" Carter v. Butler, No. 1:24-cv-00902, 2025 WL 2776284, at *8 (D. Md. Sept. 29, 2025) (quoting Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017)). Thus, the alleged efforts to interfere with the particular grievance process available to inmates in VDOC custody "does not alone establish a First Amendment claim." Id.

The allegations are also insufficient to state a claim for denial of access to the courts. See DeMarco v. Davis, 914 F.3d 383, 387 (5th Cir. 2019) (noting that state prisoners "have a constitutionally protected right of access to the courts that is rooted in the Petititon Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment"). To state such a claim, a plaintiff must plead facts showing that he suffered an "actual injury" as a result of an official's conduct. Lewis v. Casey, 518 U.S. 343, 351 (1996); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). In particular, the plaintiff must demonstrate that he was

"frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." Gee v. Pacheco, 627 F.3d 1178, 1190 (10th Cir. 2010) (citing Lewis, 518 U.S. at 351–55); see also Christopher v. Harbury, 536 U.S. 403, 415 (2002) (explaining that a plaintiff asserting a claim for denial of access to the courts "must identify a 'nonfrivolous,' 'arguable' underlying claim" and that the predicate claim must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope") (quoting Lewis, 518 U.S. at 353 and n.3).

Quintana's allegations do not satisfy the "actual injury" requirement. The challenged conduct did not prevent Quintana from filing this action, and Quintana does not identify any other nonfrivolous action concerning his conviction or conditions of confinement that any of the defendants prevented him from filing. Additionally, "an inmate's 'right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances.'" Carter v. Collins, No. 7:22-cv-00025, 2024 WL 1260588, at *13 (W.D. Va. Mar. 25, 2024) (quoting Malott v. Weaver, No. 1:18-cv-00062, 2018 WL 1357825, at *8 (W.D. Mich. Mar. 16, 2018)). Although the Prison Litigation Reform Act contains an exhaustion requirement, "inmates are only required to exhaust available remedies before seeking judicial relief." Gonzalez v. Bendt, 971 F.3d 742, 746 (8th Cir. 2020) (citing 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632 (2016)). If prison officials prevent an inmate from using a grievance procedure, the procedure is unavailable and "the exhaustion requirement does not come into play." Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022). Consequently, the court concludes that Quintana's amended

6

complaint fails to state a viable claim for denial of access to the courts based on the alleged efforts to prevent him from exhausting his administrative remedies. See Fogle v. Gonzales, 570 F. App'x 795, 797 (10th Cir. 2014) ("We have held that when a prison official prevents a prisoner from accessing the administrative grievance process, administrative remedies are unavailable such that the prisoner may proceed directly to court without first exhausting the grievance process . . . . Thus, because Gonzales's denial of the grievance form in no way prevented or hindered Fogle from bringing suit in court, his access-to-the-courts claim indisputably lacks merit.").

For similar reasons, the court concludes that Quintana has failed to state a plausible claim of retaliation. "[A]lthough inmates do not have a constitutional entitlement to . . . accessing a grievance procedure, they have a First Amendment right to be free from retaliation when they do file [a grievance]." Booker, 855 F.3d 533, 542 (4th Cir. 2017). In order to state a cognizable retaliation claim, however, a plaintiff must plausibly allege, among other elements, that the defendant took some action that would likely deter a person of ordinary firmness from exercising his First Amendment rights. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). To satisfy that element, "a plaintiff must show that a defendant's conduct resulted in more than a de minimis inconvenience to the exercise of the plaintiff's rights; rather it must chill the exercise of such rights such that it would deter 'a person of ordinary firmness' from exercise in the future." Williams v. Mitchell, 122 F.4th 85, 89 (4th Cir. 2024) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)).

Quintana has not plausibly alleged that the actions taken in connection with his written complaints and grievances would deter an inmate of ordinary firmness from exercising his First Amendment rights. In similar circumstances, courts have held that "refusing to give a prisoner a grievance form was not the type of injury that would chill a person of ordinary firmness from exercising their constitutional rights," Fogle v. Infante, 595 F. App'x 807, 810 (10th Cir. 2014), and that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes," Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015). Similarly courts have held that "the refusal to process grievances" does not, by itself, amount to an adverse action. Brown v. Lewis, No. 18-2363, 2019 U.S. App. LEXIS 27688, at *7 (6th Cir. 2019) (collecting cases). As the Eighth Circuit has noted, such actions are "of little consequence because inmates are only required to exhaust available remedies before seeking judicial relief." Gonzalez, 971 F.3d at 746 (concluding that "an inmate of ordinary firmness would not be chilled from continuing to seek redress for his grievances because an official responsible for an early step in the [grievance] process rejects his [grievance] form or fails to provide access to a grievance appeal form"); cf. Richards v. Perttu, 96 F.4th 911, 915, 918 (6th Cir. 2024) (concluding, on the other hand, that an inmate's allegations satisfied the "adverse action" requirement where an inmate alleged that an officer "prevented him from filing grievances related to [the officer's] alleged sexual abuse by ripping up the grievances or otherwise destroying them," the complaint set forth "several specific instances when [the officer] allegedly destroyed grievances," and the inmate also alleged that the officer "threatened to kill [the inmate] if he persisted in trying to file more grievances").

8

Here, Quintana alleges that defendant Allen forged his signature on a grievance withdrawal form and that Cobb improperly determined that a subsequent written complaint was unfounded. Notably, however, inmates who wish to challenge the withdrawal of a grievance or a grievance response are not without recourse under the applicable grievance policy. The policy provides that a grievance withdrawal is only valid if it is "completed and signed by the inmate" and then submitted by "[t]he inmate" to the institutional ombudsman. VDOC Operating Procedure (OP) 866.1 § III(G) (emphasis added).[2] And if a staff member takes an action that affects the inmate personally, the inmate may file a regular grievance, followed by a grievance appeal, if they are dissatisfied with the response. Id. §§ III(B), IV(B). Additionally, if a prison official prevents a prisoner from utilizing the administrative grievance process, "the prisoner may proceed directly to court without first exhausting the grievance process." Fogle, 570 F. App'x at 797.

Quintana took these precise actions in this case; he immediately filed a written complaint and a regular grievance regarding the grievance withdrawal form that Allen allegedly forged, and he then proceeded to file this action. Under these circumstances, the court concludes that Quintana's allegations fall short of establishing that the defendants' allegedly retaliatory conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights" or "resulted in something more than a de minimis inconvenience to [his] exercise of First Amendment rights." Jones v. Solomon, 90 F.4th 198, 214 (4th Cir. 2024) (internal quotation marks omitted); see also Ferebee v. Gibson, No. 7:19-

---

[2] OP 866.1 is available online at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-866-1.pdf (last accessed May 14, 2026). The court is entitled to take judicial notice of the policy. Gordon v. Schilling, 937 F.3d 348, 353 n.6 (4th Cir. 2019).

cv-00310, 2019 WL 2395491, at *2 (W.D. Va. June 6, 2019) (dismissing a similar retaliation claim stemming from the alleged falsification of a grievance withdrawal form and noting that "the unavailability of the prison's grievance procedures . . . did not preclude [the inmate] from exercising his right to petition or his right to access the courts"); Muhammad v. Jarrett, No. 1:19-cv-00746, 2020 WL 7647635, at *7 (E.D. Va. Dec. 23, 2020) (concluding that a plaintiff's allegations did not support a claim of retaliation where the plaintiff alleged that one defendant "denied a bevy of [his] grievances" and, on one occasion, "'falsified' what plaintiff had written in a complaint" and that other defendants "merely failed to correct the wrongs inflicted at levels below them").

For these reasons, the court concludes that Quintana has failed to state a cognizable violation of the First Amendment.

### b. Fifth Amendment

Quintana has no viable claim for relief under the Fifth Amendment, which "applies 'only to the actions of the federal government—not to those of state or local governments.'" Martinez-Rivera v. Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001)); see also Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Because Quintana does not allege that any of the defendants are federal actors, any Fifth Amendment claim is "properly dismissed." Martinez-Rivera, 498 F.3d at 8.

### c.    Eighth Amendment

Quintana claims that defendant Allen acted with "deliberate indifference" in violation of the Eighth Amendment by "losing or misplacing [his] legal documents" and then "forging" his signature on a grievance form. Am. Compl. at 16. This claim is also subject to dismissal.

"Prison officials violate the Eighth Amendment's cruel-and-unusual-punishment clause when they are deliberately indifferent to a substantial risk to an inmate's <u>safety or medical needs</u>." <u>King v. Riley</u>, 76 F.4th 259, 264 (4th Cir. 2023) (emphasis added). A claim of deliberate indifference has objective and subjective elements. <u>Id.</u> First, an inmate "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury,' or a substantial risk thereof." <u>Raynor v. Pugh</u>, 817 F.3d 123, 127 (4th Cir. 2016) (quoting <u>Danser v. Stansberry</u>, 772 F.3d 340, 346-47 (4th Cir. 2014)). Second, the inmate must show that a correctional official "knew of and disregarded an excessive risk to inmate health or safety." <u>Danser</u>, 772 F.3d at 347. This is a "very high standard," which is not met by a showing of mere negligence. <u>Ford v. Hooks</u>, 108 F.4th 224, 230 (4th Cir. 2024) (internal quotation marks omitted).

Quintana has not alleged facts from which the court could reasonably infer that Allen or any other defendant consciously disregarded an excessive risk to his health or safety. Consequently, he has failed to state an Eighth Amendment claim of deliberate indifference.

### d.    Ninth Amendment

Quintana also purports to assert a claim under the Ninth Amendment. However, that amendment "creates no constitutional rights." <u>Wohlford v. United States Dep't of Agric.</u>,

11

No. 87-2043, 1988 WL 24281, at *1 (4th Cir. Mar. 17, 1988) (citing Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986)). Instead, it merely provides that the enumeration of certain rights in the Constitution "shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. Consequently, Quintana has no viable claim for relief based on the Ninth Amendment.

### e. Thirteenth Amendment

Quintana's conclusory reference to the Thirteenth Amendment fares no better. He does not allege that any defendant subjected him to involuntary servitude or forced labor in violation of this provision. See Risley v. Hawk, 918 F. Supp. 18, 22 (D.C. Dist. 1996) (dismissing a Thirteenth Amendment claim where the inmate did not allege that the defendants subjected him to slavery).

### f. Due Process Clause of the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment prohibits state officials from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process claim, a plaintiff must first identify a protected liberty or property interest and then demonstrate deprivation of that interest without due process of law." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotation marks and brackets omitted).

Quintana's amended complaint fails to state a viable claim for denial of due process. To the extent the claim is based on his legal documents being lost or misplaced, he has not plausibly alleged that he was deprived of his property without due process. Although due process generally requires an opportunity to be heard prior to the deprivation of a property

12

interest, it is well established that a pre-deprivation hearing is not required in all circumstances. See Zinermon v. Burch, 494 U.S. 113, 127–28 (1990). For instance, the Supreme Court has held that "a state actor's unauthorized deprivation of an inmate's [property] 'does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" Hawes v. Stephens, 964 F.3d 412, 418 (5th Cir. 2020) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Under the Virginia Tort Claims Act (VTCA), the Commonwealth of Virginia is liable for claims for damages resulting from "damage to or loss of property . . . caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of his employment." Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985). Because adequate remedies are available under state law for the unauthorized deprivation of personal property by a state prison official, Quintana has no viable due process claim stemming from the loss or misplacement of his legal documents.

To the extent Quintana alleges that the defendants deprived him of due process by interfering with or failing to properly respond to his written complaints or grievances, such claim is also subject to dismissal. As noted above, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker, 855 F.3d at 541. Likewise, an inmate does not have a federally protected interest in having grievances "resolved to his satisfaction," Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005), or

13

"handled in any particular manner," <u>Taek Sang Yoon v. Arnett</u>, 385 F. App'x 666, 668 (9th Cir. 2010). Consequently, any due process claim stemming from the defendants' alleged interference with or denial of his grievances is "indisputably meritless." <u>Geiger</u>, 404 F.3d at 374.

### g.    Equal Protection Clause of the Fourteenth Amendment

To the extent Quintana intended to assert a violation of the Equal Protection Clause of the Fourteenth Amendment, his amended complaint fails to state a claim upon which relief may be granted. "To state a claim for a violation of the Equal Protection Clause, 'a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" <u>Desper v. Clarke</u>, 1 F.4th 236, 248 (4th Cir. 2021) (quoting <u>Fauconier v. Clarke</u>, 966 F.3d 265, 277 (4th Cir. 2020)). Because the amended complaint does not allege facts that would satisfy either element, it fails to state a claim for relief under the Equal Protection Clause.

### h.    Article IV

Quintana also cites to the Privileges and Immunities Clause of Article IV. This clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause" of Article IV. <u>Giannini v. Real</u>, 911 F.2d 354, 357 (9th Cir. 1990). Because the amended complaint does not set forth facts from which the court could reasonably infer that Quintana was discriminated against on the basis of his state of residence, it fails to state a

14

claim under this provision. See Barefoot v. City of Wilmington, 306 F.3d 113, 125 (4th Cir. 2002) ("The Appellants make no argument regarding any discrimination between citizens of different States, nor can we conceive of any. Accordingly, the Appellants have failed to state a claim under Article IV.").

### 2.      Federal Statutory Claims

#### a.      18 U.S.C. §§ 2 and 922(a)(6)

To the extent Quintana seeks relief for alleged violations of federal criminal statutes, including 18 U.S.C. §§ 2 and 922(a)(6), he has failed to state a claim upon which relief may be granted. A plaintiff generally cannot pursue a civil claim based on a violation of a criminal statute unless the statute itself creates a private right of action. See Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from 'a bare criminal statute.'") (quoting Cort v. Ash, 422 U.S. 66, 80 (1975)). Neither of the cited criminal statutes expressly provides for any private right of action or contains any language from which a private right of action may be implied. Additionally, 18 U.S.C. § 922—a provision enacted as part of the Gun Control Act of 1968, United States v. Duroseau, 26 F.4th 674, 977 (4th Cir. 2022)—is completely inapplicable, and the Supreme Court has expressly "decline[d] to rely on 18 U.S.C. § 2 as the basis for recognizing a private aiding and abetting right of action." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994). Accordingly, Quintana has no viable claim for relief based on the referenced criminal statutes.

### b.    42 U.S.C. § 1981

Section 1981 of Title 42 provides that all persons "shall have . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons, and shall be subject to like punishment . . . ." 42 U.S.C. § 1981. To state a claim under § 1981, "a plaintiff must allege (1) he is a member of a racial minority; (2) the defendant intended to racially discriminate him, and (3) the discrimination concerned one or more of the activities enumerated in the statute." Jimenez v. WellStar Health Sys., 596 F.3d 1304, 1308 (11th Cir. 2010); see also Nnadozie v. Genesis Healthcare WellStar Health Sys., 730 F. App'x 151, 157 (4th Cir. 2018) ("[A]t the very least, a Section 1981 claim must allege race-based discrimination."). Because Quintana does not allege that any of the defendants intentionally discriminated against him on the basis of his race, he fails to state a claim under § 1981.

### c.    42 U.S.C. § 1985(3)

Quintana's conspiracy claim under 42 U.S.C. § 1985(3) is also subject to dismissal. This statute prohibits two or more persons from conspiring to deprive another person "of the equal protection of the laws." 42 U.S.C. § 1985(3). "To recover under § 1985(3), a plaintiff must establish the existence of a conspiracy and show 'some racial or perhaps other class-based, invidiously discriminatory animus behind the conspirators' actions.'" C & H Co. v. Richardson, 78 F. App'x 894, 901 (4th Cir. 2003) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)); see also Strickland v. United States, 32 F.4th 311, 361 (4th Cir. 2022) (explaining that a plaintiff must plausibly allege, among other elements, "a conspiracy

16

of two or more persons . . . who are motivated by a specific class-based, invidiously discriminatory animus") (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)).

Here, Quintana alleges in a conclusory fashion that the defendants participated in a "conspiracy for abridgement." Am. Compl. at 10. Because Quintana does not "plausibly allege any conspiratorial plan of class-based discriminatory animus," he fails to state a claim under § 1985(3). Strickland, 32 F.4th at 362.

### d.    42 U.S.C. § 1997d

Finally, the court must dismiss Quintana's claim that defendants violated 42 U.S.C. § 1997d. "Section 1997d is part of the Civil Rights of Institutionalized Persons Act, and provides: 'No person reporting conditions which may constitute a violation under the [Act] shall be subjected to retaliation in any manner for so reporting.'" Price v. Brittain, 874 F.2d 252, 262 (5th Cir. 1989) (alteration in original) (quoting 42 U.S.C. § 1997d)). A separate provision of the Act authorizes the Attorney General to sue a state when the Attorney General has reasonable cause to believe that the state is "subjecting persons . . . confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any [federal] rights . . . causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights . . . ." 42 U.S.C. § 1997a.

Quintana does not allege that he reported the type of conditions that may support the filing of a lawsuit by the Attorney General. Even if he had, "the anti-retaliation provision does not afford a private right of action." Miller v. Fed. Bureau of Prisons, 703 F. Supp. 2d 8, 16 (D.D.C. 2020) (citing 42 U.S.C. § 1997j) ("The provisions of this subchapter shall in no

way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons.")); see also McRorie v. Shimoda, 795 F.2d 780, 782 n.3 (9th Cir. 1986) (noting that "42 U.S.C. § 1997j precludes a private cause of action under these sections"). Consequently, Quintana has no viable claim for relief under § 1997d.

**B.    Claims under State Law**

Because each of the federal claims asserted in the amended complaint is subject to dismissal for failure to state a claim, the court declines to exercise supplemental jurisdiction over any claim asserted under state law. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## IV.    Conclusion

For the foregoing reasons, the court concludes that Quintana's amended complaint fails to state a cognizable claim under federal law against any of the named defendants. The federal claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1), and the remaining claims under state law are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). An appropriate order will be entered.

Entered: May 20, 2026

Michael F. Urbanski
U.S. District Judge
2026.05.20
14:50:40 -04'00'

Michael F. Urbanski
Senior United States District Judge

18